UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. T., et al., <br><br>  Plaintiffs, <br><br> v. <br><br> ELEANOR MURRAY FALLON MIDDLE SCHOOL, et al., <br><br>  Defendants. | Case No. 24-cv-00110-TSH <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. No. 17 |

## I. INTRODUCTION

Plaintiffs L.T., and his father, Lance Turner II, bring this case against Dublin Unified School District,[1] alleging L.T. was subjected to racial discrimination, harassment and bullying at school. Pending before the Court is the District's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 17. Plaintiffs filed an Opposition (ECF No. 18) and the District filed a Reply (ECF No. 19). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the District's motion.[2]

## II. BACKGROUND

L.T. is a 12-year old African American who attended Eleanor Murray Fallon Middle School, a public school member of the District. Compl. ¶ 10, ECF No. 1. He resides with his parents, Lance Turner II and Corrine Van Hook-Turner, in Dublin, California. *Id.* L.T. brings this action by and through his guardian ad litem, Lance Turner II.

L.T. enrolled at Fallon in the Fall of 2022 as a 7th grader. *Id.* ¶ 14. Within a few months

---

[1] Erroneously sued as Eleanor Murray Fallon Middle School.
[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 16.

of his enrollment, L.T. became the victim of racial discrimination, harassment, and bullying. *Id.* ¶ 15. These incidents "were exacerbated by the inappropriate and inadequate responses from several members of Fallon's faculty that resulted in additional harm to Plaintiff L.T." *Id.*

### A. First Incident

On October 14, 2022, L.T.'s parents received a call from Assistant Principal Cheryl Di Grazia informing them that an 8th grade student at Fallon had used racial slurs toward L.T. *Id.* ¶ 16. L.T. reported this incident to Ms. Di Grazia, and it was subsequently noted in his Behavior Report. *Id.* When L.T.'s parents were contacted, they immediately inquired about the wellbeing of their son and the form of disciplinary action that would be implemented. *Id.* ¶ 17. They were informed that the use of racial slurs was not a "suspendable offense" and that a member of the faculty would call them to discuss the next steps. *Id.*

On October 18 Turner received a call from Candice Baligaya, a school counselor at Fallon, who explained that the incident would be resolved by having a "restorative circle" with L.T. and the other student, in which L.T. could explain the effect of the racial slur, how it made him feel, and to receive an apology from the other student. *Id.* ¶ 18. Turner explained that L.T. did not comprehend the meaning of the racial slur enough to explain how it affected him to another child, and he suggested the suspension of the other child as a more effective method of disciple. *Id.* ¶ 19. The following day, Ms. Baligaya proceeded with the restorative circle, then called L.T.'s parents to inform them that the meeting went well and that the students' lockers and school routes would be separated to ensure they would only encounter each other during lunch and gym class. *Id.* ¶ 21.

### B. Second Incident

On October 27, 2022, L.T.'s parents received a call from Assistant Principal Kelly Zummo informing them that their son had been involved in another incident, during which L.T. was allegedly tripped by the same 8th grade student and the student said "I'm sorry n****." *Id.* ¶¶ 23, 24. L.T. reported the incident to his gym teacher and both students were escorted to the office. *Id.* ¶ 25. During the phone call between Ms. Zummo and Turner, Ms. Zummo stated that the racial slur made by the 8th grade student was "in a different context because he said it with a 'hard a'

and not a 'hard er' like last time." *Id.* ¶ 26. When Turner expressed his concerns that the matter was not being handled properly and that his child was not being properly protected against incidents such as this, Ms. Zummo responded, "I'm sorry you feel this way, but this is how DUSD does things." *Id.* ¶ 27.

### C.     Third Incident

On January 26, 2023, L.T.'s parents received another call from Fallon informing them that his eyeglasses were broken by another student who had stepped on them during gym class. *Id.* ¶ 29. Although a teacher assured L.T. that the incident was an accident, when his parents brought the glasses to be repaired, they were told the damage was caused by an intentional act. *Id.* ¶ 31. Virtually no action was taken to investigate this incident further, including whether it was the same 8th grader as the previous incidents. *Id.* ¶ 32.

### D.     Fourth Incident

On February 23, 2023, L.T.'s parents received an email from Fallon Principal Mark Nelson, informing them that another student had used a racial slur by calling him a "monkey." *Id.* ¶ 33. Nelson reassured L.T.'s parents that he would address the racist comments with the student and parent the next day, and that Megan Casino, the Lead School Psychologist, would "check-in" with L.T., but virtually nothing was done. *Id.* ¶¶ 34, 43. On the same day as the incident, the District released a statement addressing the "uptick in the use of the 'N' word" towards African American students. *Id.* ¶ 37.

### E.     Fifth Incident

On March 10, 2023, a different student called L.T. a "monkey." *Id.* ¶¶ 48-49. The faculty responded by requiring L.T. to explain to the other student why the term "monkey" is a racial slur. *Id.* ¶ 49. After the second incident, "extreme measures should have been taken by the school, it's [sic] faculty and the District. Yet nothing was done and four more serious incidents of bullying and assaultive behavior was allowed to take place." *Id.* ¶ 50.

### F.     Sixth Incident

On May 11, 2023, while L.T. was leaving gym class, another Fallon student walked passed and got into a fighting stance towards L.T. *Id.* ¶ 51. The other student apologized, but then

1   followed up the apology by saying, "I just felt threatened by you because you're Black." *Id.* ¶ 53.

2   L.T. reported the incident to Mr. LaMonica, who indicated he would inform the Vice Principal.

3   *Id.* ¶ 54.

### G. Allegations Related to Lance Turner

On October 27, 2022, the day he had the phone conversation with Ms. Zummo, Turner went to Fallon to pick up his son from school. *Id.* ¶ 56. As he was walking to the office, Ms. Zummo approached him, introduced herself, and asked if she could speak with him. *Id.* ¶ 57. When Turner agreed and said he would wait in her office, Ms. Zummo refused to allow him to wait there and instead insisted he wait outside the building. *Id.* Turner stated he would not wait outside in the sweltering heat with his two children when they would all be more comfortable inside her office. *Id.* ¶ 58. While on his way to Ms. Zummo's office, he overheard her announce over the loudspeaker: "L.T.'s father is headed to the office and he is irate." *Id.* ¶ 59. When he asked Ms. Zummo the reason for that announcement, she refused to answer him and instead walked away. *Id.* ¶ 60. About 15 minutes later, a police officer entered Fallon's campus. *Id.* ¶ 61. Once the police officer arrived, Ms. Zummo spoke to the officer along with one of the custodians at the school. *Id.* ¶ 62. The custodian walked to Turner and told him the police officer was called to surveil him. *Id.* The police officer remained in viewing distance and watched Turner and his children for another 30-45 minutes until they left the school. *Id.*

On November 3, 2022, Turner went to Fallon to retrieve an incident report before going to the police station to file his own report. *Id.* ¶ 63. While he waited, Ms. Baligaya approached him and apologized that another incident had occurred. *Id.* ¶ 66. She expressed that she believed the restorative circle would be effective, and she was surprised that the same student had harassed L.T. again. *Id.* ¶ 67. As Turner exited the office, two police officers arrived. *Id.* ¶ 69. Turner proceeded to the police department to make a report and was told that the officers responsible for drafting the reports were already at Fallon. *Id.* When the officers returned to the station, they informed Turner that they were called to Fallon at the request of the family of the 8th grader who had used racial slurs against Plaintiff L.T. *Id.* ¶ 70. They also explained this student had used racial slurs with other African American students at Fallon in the past. *Id.* ¶ 71.

4

1    On May 17, 2023, Turner officially withdrew his son from school out of fear for his safety. *Id.* ¶ 72. Turner's children are currently both being homeschooled as their parents faced obstacles working with the District to enroll them in another school before the start of the academic year. *Id.* ¶ 74.

**H.   Procedural Background**

Plaintiffs filed this case on January 5, 2024, after receiving notice that the District rejected their administrative claims under the California Government Code. *Id.* ¶¶ 7-8. They bring six causes of action against the District and Does 1 through 25: (1) discrimination based on race in violation of 42 U.S.C. § 1983; (2) discrimination based on race in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (3) violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51, et seq.; (4) negligence; (5) intentional infliction of emotional distress; and (6) violation of California Education Code section 220. Compl. ¶¶ 75-96.

The District filed the present motion to dismiss on June 7, 2024.

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551

U.S. 89, 93–94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

### A.   42 U.S.C. § 1983

Plaintiffs' first cause of action alleges violations of 42 U.S.C. § 1983. They allege "Defendants and its [sic] authorized policy makers" violated Plaintiffs' constitutional rights through their "customs, policies, directives, practices, acts and omissions." Compl. ¶ 76. "These customs and policies include, but are not limited to, teaching, and encouraging SPA paraprofessionals, teachers, and staff to deny the same rights afforded to all other students of non-African descent, create a hostile learning environment and failing to adequately provide SPA staff with sufficient training and/or supervision regarding the prohibition maltreatment and discrimination towards African American students—in particular, those with learning disabilities." *Id.* The District argues Plaintiffs' claim fails as a matter of law because it is not a "person" for purposes of § 1983. Mot. at 12.

Section 1983 provides: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

proceeding for redress[.]" 42 U.S.C. § 1983 (emphasis added). "[A] State is not a person within the meaning of § 1983," although "a municipality" is. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 62, 64 (1989). More specifically, "local government units which are not considered part of the State for Eleventh Amendment purposes" are persons under § 1983, but "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not. *Id.* at 70; *accord Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991).

Plaintiffs argue the District is considered a state actor under § 1983 because it receives funding from the State of California. Opp'n at 13. However, it is well settled that school districts in California are "arms of the State" for Eleventh Amendment purposes and are therefore not "persons" within the meaning of § 1983. *See, e.g., Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992) (school district "is a state agency for purposes of the Eleventh Amendment . . . because a judgment against the school district would be satisfied out of state funds. Moreover, under California law, the school district is a state agency that performs central governmental functions."); *Kirchmann v. Lake Elsinore Unified Sch. Dist.*, 83 Cal. App. 4th 1098, 1115 (2000) ("In view of the extensive control of the state over the fiscal affairs and political status of school districts, the Ninth Circuit in *Belanger* correctly determined a California school district should be considered an arm of the state for purposes of the Eleventh Amendment."); *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1247 (9th Cir. 2015) ("It is well-established that a school district cannot be sued for damages under § 1983."); *Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1577 (N.D. Cal. 1993) ("California school districts are arms of the state for purposes of Eleventh Amendment immunity and are therefore immune from liability under section 1983."); *Bratton v. Bd. of Educ. of Emery Unified Sch. Dist.*, 1997 WL 797943, at *2 (N.D. Cal. Dec. 16, 1997) ("California school districts are considered 'arms of the State.' The California Department of Education, the Emery Unified School District, and the School Board are therefore immune from suit under section 1983.") (citation omitted). As such, any claim against the District under § 1983 must be dismissed.

In the face of this unambiguous precedent, Plaintiffs argue their § 1983 claim is valid

1    because they "name several individuals in the Complaint who work for Defendant and who, it is

2    clear from the Complaint, create and implement discriminatory policies." Opp'n at 13. This

3    includes:

> 1. Defendant's Assistant Principal Ms. Zummo, who described Defendant's policies that the "N" word is "in a different context" when it is said with "a 'hard a' instead of a 'hard er' like last time" (Compl., ¶26); 2. Defendant's Assistant Principal Cheryl Di Grazia, who, when asked by Plaintiff Lance Turner II what disciplinary action would come out of this incident, responded to L.T.'s parents by playing down the events and stating that racial slurs are "not a suspendable offense" (Compl., ¶17); 3. Defendant's school counselor Candice Balyigaya, who explained that the discriminatory incidents could be "resolved" by holding a "restorative circle" in which L.T. would be forced to explain to the harasser how the slur "made him feel" (Compl., ¶18); and 4. Lead School Psychologist Megan Casino, who conducted a "check-in" with L.T. to discuss the discriminatory conduct and how to resolve the same. (Compl., ¶34.).

12   Opp'n at 13-14. However, Plaintiffs have not named any of these individuals as defendants.

13   Further, the same rule that applies to school districts generally applies to suits against individuals

14   in their official capacities, because "a suit against a state official in his or her official capacity is

15   not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71

16   (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). "As such, it is no different from a suit against

17   the State itself." *Id.* (citations omitted).

18   While Plaintiffs have not named any individual defendants, the Court notes that an

19   exception exists when "a state official in his or her official capacity [is] sued for injunctive relief."

20   *Id.* at 71 n.10. As such, to the extent Plaintiffs seek to allege a claim for injunctive relief against

21   individual District employees, such a claim would not be subject to dismissal on the ground that

22   they are not "persons" under § 1983. Accordingly, the Court **GRANTS** the District's motion to

23   dismiss Plaintiffs' § 1983 claim **WITH LEAVE TO AMEND** to the extent they seek to bring this

24   claim against individual defendants.

25   **B.     Civil Rights Act of 1964**

26   In their second cause of action, Plaintiffs allege the District violated Title VI of the Civil

27   Rights Act of 1964 because "L.T. was subject to racially discriminatory remarks and bullying

28   from other students and then forced by the faculty to explain racism to the offending students."

Compl. ¶ 82. "L.T. was denied the benefit of a safe, encouraging and learning environment which should be always provided to all students. When viewed in the light of the racist and abusive treatment Plaintiff L.T. endured at Fallon, the faculty's refusal to acknowledge the heinous nature of the incidents and punish the offending students was backed with racially discriminate intent." *Id.*

Title VI of the Civil Rights Act of 1964 mandates: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial assistance." 42 U.S.C. § 2000d. To prove a violation of Title VI's prohibition on racially hostile environments, a party must show: (1) the existence of a racially hostile environment, (2) of which a recipient of federal funds had notice and (3) failed to adequately redress. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998). Racial harassment creates a hostile environment if it is sufficiently severe that it would interfere with the educational program of a reasonable person of the same age and race as the victim. *Id.* at 1033. While a plaintiff must prove intent at trial, it need not be pled in the complaint. *Id.* at 1026.

Plaintiffs allege the District receives federal funding, the District's decision makers were aware of numerous incidents that resulted in direct discrimination against L.T., and they failed to take direct measures to combat these incidents and instead had L.T. speak to the students about why their remarks were harmful. Compl. ¶¶ 81-82. They allege that "[w]hen viewed in the light of the racist and abusive treatment Plaintiff L.T. endured at Fallon, the faculty's refusal to acknowledge the heinous nature of the incidents and punish the offending students was backed with racially discriminate intent." *Id.* ¶ 82. Taking Plaintiffs' allegations as true and construing them in the light most favorable to them, they appear sufficient to state a claim. A school that is "'deliberately indifferent' to its students' right to a learning environment free of racial hostility and discrimination . . . is liable for damages under Title VI." *Monteiro*, 158 F.3d at 1034 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)). Pursuant to this standard, a school is liable for its inaction "if the need for intervention was so obvious, or if inaction was so likely to result in discrimination, that 'it can be said to have been deliberately indifferent to the need.'" *Id.*

1  (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)); *see also Doe v. Willits Unified Sch.*
2  *Dist.*, 473 Fed. App'x 775, 776 (9th Cir. 2012) ("To meet this high standard, there must, in
3  essence, be an official decision not to remedy the violation and this decision must be clearly
4  unreasonable.").

5        The District argues that contrary to Plaintiffs' allegations, it addressed the behavior
6  immediately by investigating the incidents and implementing its progressive discipline policies.
7  Mot. at 15 ("The District's actions in conducting an investigation, meeting with the offending
8  students and their parents, meeting with Plaintiff and his parents, and offering counseling support
9  to Plaintiff, as well as issuing a public statement condemning any use of inappropriate language or
10 conduct and launching an initiative to support African-American students and their families
11 squarely defeat a claim of 'deliberate indifference.'").  It argues "the Complaint fails to establish
12 the school acted with 'deliberate indifference' given that the District had sprung into action and
13 conducted an investigation immediately after each incident was reported." *Id.*  However, "[t]he
14 existence of a hostile educational environment is a question of fact that must be determined based
15 on the totality of the circumstances[.]" *Grimes v. Bd. of Trustees for Northcentral Univ.*, 2024
16 WL 150724, at *4 (S.D. Cal. Jan. 12, 2024) (citing *Monteiro*, 158 F.3d at 1033).  The District's
17 argument is more appropriate at a later stage in the proceedings, as in the case cited by the District.
18 *See Santos v. Peralta Cmty. Coll. Dist.*, 2009 WL 3809797, at *8 (N.D. Cal. Nov. 13, 2009)
19 (granting summary judgment where there was "no genuine dispute of fact that Peralta either had
20 actual knowledge of discrimination or that it acted with deliberate indifference to any
21 discrimination."); *compare Boyd v. Feather River Cmty. Coll. Dist.*, 2011 WL 5024547, at *3
22 (E.D. Cal. Oct. 20, 2011) (denying motion to dismiss where plaintiffs alleged they were subjected
23 to a racially hostile educational environment, in violation of Title VI, and that defendants did not
24 take appropriate steps to end the harassment, finding defendants' arguments to the contrary were
25 "premature").[3]

---

27 [3] The District asks the Court to take judicial notice of certain of its policies.  ECF No. 17-1.  The Court **DENIES** the request on the ground of relevance.  The existence of written policies does not
28 show that they are adequate and does not show they were complied with.  *See* Compl. ¶¶ 17, 19, 39, 40, 41, 43, 46, 47 (alleging District's policies are not adequate and also not appropriately

10

The District also argues it is entitled to immunity under California Government Code section 820.2. Mot. at 16. However, "[i]t has been said in no uncertain terms that state law immunities may not shield state and municipal employees from federal claims." *Matthews v. San Diego Cnty. Bd. of Supervisors*, 2019 WL 1793356, at *4 (S.D. Cal. Apr. 24, 2019) (collecting cases). "Thus, any state law immunities invoked by Defendants may not be used to shield them from any federal claims." *Id.*

Accordingly, the Court **DENIES** the District's motion to dismiss Plaintiffs' Title VI claim.

## C.     Unruh Act

Plaintiffs allege the District violated the Unruh Act when it "intentionally treated Plaintiff L.T. differently than other students." Compl. ¶ 86.

California Civil Code section 51 codifies the Unruh Act and provides that all persons within California are "free and equal" and "no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." "California courts have interpreted the term 'business establishment' in the 'broadest sense reasonably possible[.]'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1124 (9th Cir. 2008).

Plaintiffs allege the middle school is a "business establishment" under the Unruh Act because it is a public school. Compl. ¶ 85. However, courts have held that public schools and their employees are not subject to suit under the Unruh Act because a public school district is not considered a business establishment under the Act. *See Brennon B. v. Superior Ct.*, 13 Cal. 5th 662, 684 (2022) (holding a school district was not a business establishment when it provided educational services); *Amaral v. Beloglovsky*, 2024 WL 1557474, at *4 (E.D. Cal. Apr. 10, 2024) ("Defendants correctly argue in their motion to dismiss that public schools and their employees are not subject to suit under the Unruh Act, which only covers 'business establishments.'") (citing

implemented).

11

*Brennon B.*, 13 Cal. 5th at 684).

Accordingly, the Court **GRANTS** the District's motion to dismiss Plaintiffs' Unruh Act claim **WITHOUT LEAVE TO AMEND**.

### D.    Negligence and Intentional Infliction of Emotional Distress

Plaintiffs' fourth and fifth causes of action are for negligence and intentional infliction of emotional distress. Compl. ¶¶ 84-91. The District argues these claims fail because Plaintiffs do not identify the statutory authority under which they seek to bring these claims. Mot. at 17-18.

In California, all government tort liability is dependent on the existence of an authorizing statute. Cal. Gov. Code § 815; *Lopez*, 40 Cal. 3d at 785 n.2; *Morris v. State of California*, 89 Cal. App. 3d 962, 964 (1979). "To state a cause of action, every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty." *D.K. ex rel. G.M. v. Solano Cnty. Off. of Educ.*, 667 F. Supp. 2d 1184, 1198 (E.D. Cal. 2009) (citing *Susman v. Los Angeles*, 269 Cal. App. 2d 803, 808 (1969); *Lopez*, 40 Cal. 3d at 795). Thus, "[s]ince the duty of a governmental agency can only be created by statute, the statute claimed to establish the duty must be identified." *Id.* (citing *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792 (1986).

Plaintiffs' complaint fails to identify any statute authorizing liability against the District and instead alleges their negligence and IIED claims based on principles of common-law negligence. Compl. ¶¶ 84-91. However, there is no common law liability on the part of a public entity in California for any act or omission by the entity itself, or a public employee, or any other person. *See Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 899 (2008) ("[O]ur own decisions confirm that [Cal. Gov't Code] section 815 abolishes common law tort liability for public entities.") (citing *Eastburn v. Reg'l Fire Protection Auth.*, 31 Cal. 4th 1175, 1179 (2003); *Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th 1112, 1127-28 (2002); *Adkins v. State of California*, 50 Cal. App. 4th 1802, 1817-18 (1996); *Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal. App. 3d 859, 866-67 (1988)). Thus, because Plaintiffs fail to identify any statute authorizing liability, their claims must fail. *See D.K.*, 667 F. Supp. 2d at 1198 (dismissing state law claims against public entity because plaintiff failed to identify statutory basis for claims).

12

In their opposition brief, Plaintiffs contend that California Government Code § 815.2 provides a statutory basis for liability by the District for the acts or omissions of its employees. Opp'n at 19. In reply, the District does not contest that it could be held vicariously liable for its employees' negligence under section 815.2. Rather, the District argues that Plaintiffs' complaint does not allege a statutory basis for the negligence and IIED claims and instead alleges only a common law basis for them. Reply at 5-6. The District is correct that Plaintiffs' complaint does not allege a statutory basis for these claims.

Accordingly, the Court **GRANTS** the District's motion to dismiss Plaintiffs' negligence and intentional infliction of emotional distress claims **WITH LEAVE TO AMEND**.

### E.  California Education Code Section 220

In their claim under California Education Code section 220, Plaintiffs allege the District subjected L.T. to discriminatory treatment based on race either directly or by authorizing or ratifying the alleged offending students' misconduct. Compl. ¶¶ 95-96.

Section 220 prohibits disability discrimination based on protected characteristics, including race, "in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid." Cal. Educ. Code § 220. To state a viable claim, a plaintiff must allege: "(1) he or she suffered 'severe, pervasive and offensive' harassment, that effectively deprived plaintiff of the right of equal access to educational benefits and opportunities; (2) the school district had 'actual knowledge' of that harassment; and (3) the school district acted with 'deliberate indifference' in the face of such knowledge." *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579 (2008) (citation omitted).

As with Plaintiff's Title VI claim, the District argues the complaint does not allege facts to demonstrate a person at the District with the requisite authority to act showed "deliberate indifference" to the offensive conduct. Mot. at 19. However, as discussed above, this is a question of fact that must be determined based on the totality of the circumstances, and it is therefore more appropriate at a later stage in the proceedings. *Grimes* 2024 WL 150724, at *4; *Boyd*, 2011 WL 5024547, at *3.

The District also argues discretionary immunity shields it from Plaintiffs' section 220 claim as it arises from disciplinary decisions. Mot. at 19. California Government Code section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." The District argues it "exercised its discretion and enforced its policies regarding use of positive interventions and alternative disciplinary measures instead of suspension or expulsion," and "enforced its policies fairly and consistently, and in accord with its policy of non-discrimination in its programs and activities." Mot. at 16.

Whether a public employee is entitled to immunity for discretionary acts hinges on whether the acts or omissions in dispute constitute "basic policy decisions" or "ministerial" decisions. *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995). "Immunity is reserved for those '*basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government[.]'" *Id*. (quoting *Johnson v. State of California*, 69 Cal. 2d 782, 793 (1968)) (emphasis in the original). "On the other hand . . . there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." *Id*. (quoting *Johnson*, 69 Cal. 2d at 796). There is also no basis for immunizing decisions that are not actually "deliberate and considered." *Id*.

Here, decisions by the District's supervisory personnel regarding disciplinary matters could be considered "discretionary" and within the scope of section 820.2. *See Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389–90 (N.D. Cal. 1997) ("Decisions by a school principal or superintendent to impose discipline on students and conduct investigations of complaints necessarily require the exercise of judgment or choice, and accordingly are discretionary, rather than ministerial, acts."); *Thompson v. Sacramento City Unified Sch. Dist.*, 107 Cal. App. 4th 1352, 1361 (2003) (school district's decision to expel or readmit a student is discretionary in nature and falls within discretionary acts immunity). However, "[t]he fact that a [public] employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not [actually] render a considered decision." *Lopez v. So. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985). Immunity under section 820.2 attaches only after the public employee

14

"prove [s] that . . . in deciding to perform (or not perform) the act which led to [the] plaintiff's injury, [he or she] *consciously exercised discretion* in the sense of assuming certain risks in order to gain other policy objectives." *Id*. (emphasis in original). Here, the Court finds it is premature to make this determination as Plaintiffs have not named any individual defendants, and the facts alleged in the pleadings do not establish that all the individuals involved "consciously and deliberately weighed various policy objectives in deciding not to investigate or discipline the alleged harassment. Therefore, the defendants will have to make that showing at a later date." *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1122 (E.D. Cal. 2011) (finding defendants were not entitled to immunity under section 820.2 at the pleading stage); *J.E.L. v. San Francisco Unified Sch. Dist.*, 185 F. Supp. 3d 1196, 1200-02 (N.D. Cal. 2016) (denying motion to dismiss section 220 claim where plaintiff alleged offensive bullying behavior by another student, in plain view of school personnel); *Jones v. Kern High Sch. Dist.*, 2008 WL 3850802, at *28 (E.D. Cal. Aug. 14, 2008) (denying blanket immunity for acts relating to "the direct and immediate supervision of school children"); *Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1131 (E.D. Cal. 2018) (finding question of immunity under section 820.2 for school principal could not be determined at the motion to dismiss stage).

Accordingly, the Court **DENIES** the District's motion to dismiss Plaintiffs' section 220 claim.

### V.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the District's motion. Plaintiffs may file an amended complaint by September 4, 2024.

**IT IS SO ORDERED.**

Dated: August 5, 2024

THOMAS S. HIXSON
United States Magistrate Judge