UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.T., a minor, by and through Guardian Ad Litem LANCE TURNER II, LANCE TURNER II, an individual<br><br>Plaintiffs,<br><br>v.<br><br>ELEANOR MURRAY FALLON MIDDLE SCHOOL, et al.,<br><br>Defendants. | Case No. 24-cv-00110-TSH<br><br>**ORDER GRANTING MOTION TO APPROVE MINOR'S COMPROMISE**<br><br>Re: Dkt. No. 43 |

## I.   INTRODUCTION

Plaintiffs L.T., and his father, Lance Turner II, bring this case against Dublin Unified School District[1] and individual school district employees, alleging L.T. was subjected to racial discrimination, harassment and bullying at school. The parties have reached a settlement, and Plaintiffs now move for an order approving the agreed-upon settlement under Federal Rule of Civil Procedure 17(c). ECF No. 43. No opposition has been received. The Court finds this matter suitable for disposition without oral argument. Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** Plaintiffs' motion.[2]

## II.   BACKGROUND

**A.   Factual Background**

L.T. is a 12-year-old African American who attended Eleanor Murray Fallon Middle School, a public school member of the District. First Am. Compl. ¶ 10, ECF No. 23. He resides

---

[1] Erroneously sued as Eleanor Murray Fallon Middle School.
[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 16.

1   with his parents, Lance Turner II and Corrine Van Hook-Turner, in Dublin, California. *Id.* L.T.
2   brings this action by and through his guardian ad litem, Lance Turner II.
3          L.T. enrolled at Eleanor Murray Fallon Middle School in the Fall of 2022 as a seventh
4   grader. *Id.* ¶ 21. Within a few months of his enrollment, L.T. alleges he became the victim of
5   racial discrimination, harassment, and bullying, which was "exacerbated by the inappropriate and
6   inadequate responses from several members of Fallon's faculty that resulted in additional harm to
7   Plaintiff L.T." *Id.* ¶ 22.
8          In one incident, L.T.'s parents received a call from an assistant principal informing them
9   that a student used racial slurs toward L.T. *Id.* ¶ 23. When L.T.'s parents asked about the form of
10  discipline that would be implemented, they were told the use of racial slurs was not a
11  "suspendable offense" and that a member of the faculty would call them to discuss the next steps.
12  *Id.* ¶ 24. A school counselor later told them the matter would be resolved by holding a
13  "restorative circle" between the students. *Id.* ¶ 25-29.
14         In another incident, L.T. was running the track in gym class when another student tripped
15  and bumped into him. *Id.* ¶ 31. The student said it was an accident, but he then ran around the
16  track and tripped L.T. again while saying, "I'm sorry n****." *Id.* L.T. reported the incident to his
17  gym teacher and both students were escorted to the office. *Id.* ¶ 32. During a phone call between
18  a school representative and Lance Turner, the representative stated that the racial slur was made
19  "in a different context because he said it with a 'hard a' and not a 'hard er' like last time." *Id.* ¶
20  33.
21         In another incident, L.T.'s parents received a call informing them that his eyeglasses were
22  broken by another student who had stepped on them during gym class. *Id.* ¶ 36. Virtually no
23  action was taken to investigate this incident further, including whether it was the same student as
24  the previous incidents. *Id.* ¶ 39.
25         On February 23, 2023, L.T.'s parents received an email from Principal Mark Nelson,
26  informing them that another student called L.T. a "monkey." *Id.* ¶ 40. That same day, the District
27  released a statement addressing the "uptick in the use of the 'N' word" towards African American
28  students. *Id.* ¶ 44. A few weeks later, a different student called L.T. a "monkey." *Id.* ¶¶ 55-56.

United States District Court
Northern District of California

The faculty responded by requiring L.T. to explain to the other student why the term monkey is a racial slur. *Id.* ¶ 56.

On May 11, 2023, while L.T. was leaving gym class, another student walked past and got into a fighting stance towards L.T. *Id.* ¶ 58. The student apologized but then said, "I just felt threatened by you because you're Black." *Id.* ¶ 60.

**B.     Procedural Background**

On January 5, 2024, Plaintiffs filed their initial complaint in this matter. On September 3, 2024, they filed a First Amended Complaint, allege five causes of action: (1) discrimination based on race in violation of 42 U.S.C. § 1983; (2) discrimination based on race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (3) negligence; (4) IIED; and (5) violation of California Education Code section 220. *Id.* ¶¶ 82-106.

On September 16, 2024, the Court granted the parties' stipulation to attend a settlement conference with Magistrate Judge Nathaniel Cousins. ECF Nos. 24, 25. The parties subsequently attended a settlement conference with Judge Cousins on January 21, 2025, and continued independent settlement discussions through March 24, at which time they notified the Court that the matter had settled. ECF Nos. 33, 35, 41.

Plaintiffs filed the present motion on May 2, 2025. The parties have agreed to settle this mater for $300,000, with Plaintiff L.T.'s net proceeds totaling $74,749.38. Costanzo Decl. ¶ 30, ECF No. 43.-2. The minor's settlement funds are to be deposited into a blocked account in which no withdrawals of principal or interest shall be made prior to L.T. attaining the age of 18, except upon written order of this Court. Turner Decl. ¶ 5, ECF No. 43-3. L.T. is set to turn 18 on April 29, 2028. *Id.*

### III.     LEGAL STANDARD

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d

1075, 1080 (9th Cir. 1978)). "In other words, in this context, the fairness determination is an independent, not a comparative, inquiry." *Id.* at 1182. Thus, courts must "focus[ ] on the net recovery of the minor plaintiffs under the proposed agreement," and "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id.* at 1181-82. "Most importantly, the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel – whose interests the district court has no special duty to safeguard." *Id.* at 1182 (citing *Dacanay*, 573 F.2d at 1078).

## IV. DISCUSSION

The Court finds the $74,749.38 net recovery is fair and reasonable. Approving the settlement would allow L.T. to move forward with his life. His father, who is his guardian ad litem, agrees that the Court should approve the settlement, with the settlement funds deposited into a blocked account that L.T. can access after he turns 18. Turner Decl. ¶¶ 4-5. Further, the settlement amount is reasonable in light of L.T.'s claims and the average recovery in similar cases. *See, e.g., C. H. v. Brentwood Union Sch. Dist.*, 2023 WL 2277124, at *2 (N.D. Cal. Feb. 28, 2023) ($40,000 to minor whose teacher dragged him across a classroom by his hoodie when he was standing in a group of students chatting, allegedly targeting him based on his race as the only African American student in the group); *J.K. v. Gold Trail Union Sch. Dist.*, 2022 WL 3219492 at *2 (E.D. Cal. Jul. 8, 2022) ($28,456.50 to minor whose school district failed to protect from racial discrimination at school); *Ramos v. San Jose Unified Sch. Dist.*, 2019 U.S. Dist. LEXIS 29706, at *4-6 (N.D. Cal. Feb. 22, 2019) (a one-time deposit of $15,000 plus $70,450 for a settlement annuity over five years for a non-verbal disabled minor dragged across floor by school aide); *M.D. v. Rosedale Union Sch. Dist.*, 2009 WL 1357440, at *2 (E.D. Cal. May 13, 2009), *report and recommendation adopted*, 2009 WL 1531014 (E.D. Cal. May 28, 2009) ($9,999.00 compromise for minor who was verbally and physically beaten at school by other students based on her gender and perceived sexual orientation); *Walden v. Moffet*, 2007 WL 2859790, at *3 (E.D. Cal. Sept. 26, 2007) ($13,349 to minor subjected to various racial and religious discrimination in 42 U.S.C. §

1983 action). The Court also notes the parties have actively litigated this action over a period of years and have engaged in several mediation sessions prior to reaching settlement. Finally, the Court notes that all litigation costs and attorney's fees will be paid from the aggregate settlement amount and L.T. will not be responsible for any fees or costs. Costanzo Decl. ¶ 31.

## V.     CONCLUSION

Based on the analysis above, the Court **GRANTS** Plaintiffs' motion and approves the proposed settlement. Defendant shall prepare and deliver the settlement fund proceeds by July 7, 2025. $74,749.38 shall be deposited into a blocked account at a federally insured institution, in the name of the minor L.T., and no withdrawals of principal or interest shall be made until L.T. reaches the age of majority, except upon further order of this Court. Lance Turner II is **ORDERED** to file proof of deposit within 14 days of receipt of the settlement funds.

The parties shall file a dismissal or joint status report by August 7, 2025.

**IT IS SO ORDERED.**

Dated: June 6, 2025

THOMAS S. HIXSON
United States Magistrate Judge